■    In the Matter of FRANK P. DI MARSICO, Petitioner, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, et al., Respondents.—Proceeding pursuant to CPLR article 78 instituted in this court, pursuant to subdivision 4 of section 6510-a of the Education Law, to review a determination of the Board of Regents which revoked petitioner's license and registration to practice medicine. By a statement of charges and notice of hearing dated August 31, 1976, it was alleged that petitioner, a duly licensed physician, was guilty of practicing his profession with negligence on more than one occasion and committing unprofessional conduct in relation to the treatment of six residents of the Lake Shore Nursing Home located in Rochester, New York (Education Law, § 6509, subds [2], [9]). Petitioner was a part owner of that facility and had become the attending physician for each of those residents. The gist of the charges was that he had accepted responsibility for their care as patients but had neglected to provide them with proper medical assistance. A committee on professional conduct of the State Board for Professional Medical Conduct heard the charges and sustained them, in whole or in part, as to five of the patients. Its detailed findings and conclusions were accompanied by a recommendation that petitioner's license to practice medicine be suspended for one year. Although the Commissioner of Health recommended total acceptance of the committee's action, the Board of Regents ultimately directed the revocation

of petitioner's license. In this ensuing article 78 proceeding to review that determination, petitioner argues that the findings of negligence and misconduct are not supported by substantial evidence and, in any event, that the penalty imposed therefor is excessive. However, we find it unnecessary to analyze or pass upon those contentions because, in our opinion, a remittal to the Board of Regents is required by virtue of another issue raised by petitioner. The procedures followed in arriving at the instant determination were in accordance with the pertinent statutes except in one notable respect: instead of directly considering the matter as it had been received from the Commissioner of Health (Public Health Law, § 230, subd 10, par [i]; Education Law, § 6510-a, subd 2), the Board of Regents first referred it to a review committee which included one of the Regents (as per Education Law, § 6510, subd 3, par a). That body issued a report concurring in the findings of guilt, but it took a more serious view of petitioner's conduct and recommended that his license to practice medicine be revoked. The Board of Regents rendered its final determination on the next day. Stating that it was based upon the report of the review committee made pursuant to section 6510-a of the Education Law, the board modified the earlier recommendations as to the measure of discipline and gave effect to the one put forth by its committee. Thus, the timing and importance of the review committee's report cannot be denied and was plainly a major, if not controlling, factor influencing the board's decision. However, section 6510-a of the Education Law, cited by the board, contains no authorization for or mention of a review committee. The only explicit reference to such an entity appears in section 6510 of the Education Law dealing with procedures that apply to the discipline of professionals generally. While physicians fell within its coverage in prior years, cases of professional misconduct involving the medical profession were specifically removed from its reach by legislation effective September 1, 1975 (L 1975, ch 109, §§ 31, 37). This same legislation created a separate mechanism governing instances of alleged misconduct by physicians (L 1975, ch 109, §§ 28, 32) and, as noted, the Board of Regents otherwise followed these new procedures. Accordingly, we can only conclude that the board erroneously submitted this matter to a body eliminated from the review process by legislative direction. It follows that a remittal to the Board of Regents is needed so that it may assess this proceeding in a proper fashion without assistance from or reliance upon a review committee. We decide no other question. Determination annulled, without costs, and matter remitted to the Board of Regents for further proceedings not inconsistent herewith. Mahoney, P. J., Sweeney, Kane, Staley, Jr., and Mikoll, JJ., concur.