OPINION OF THE COURT
Ciparick, J.
In 1991, the Board of Regents permanently revoked petitioner’s license to practice medicine after he negligently performed five abortions, one resulting in a patient’s death, and failed to maintain proper records. Eighteen months later, petitioner applied for restoration of his medical license, maintaining that he recognized the “deficiencies” in his conduct. As proof of his rehabilitation, petitioner submitted certificates of attendance at various medical conferences and courses, and also submitted letters from friends and colleagues attesting to his character.
Petitioner’s application was first reviewed by a Peer Review Committee (see, Education Law § 6510 [3] [b]). After a hearing, the Peer Review Committee concluded that petitioner had “sufficiently fulfilled” the standards of rehabilitation and remorse necessary to resume the practice of medicine. Accordingly, it unanimously recommended that the revocation of petitioner’s license be stayed, that he be placed on probation for three years and that, upon completion of probation, his license be restored.
Petitioner next appeared before the Committee on the Professions, which issued a recommendation to the Board for a final determination (8 NYCRR 24.7 [b]). Troubled by the gravity of the original misconduct, the Committee was “not inclined to adopt the recommendation of the Peer Review Panel.” However, before making its own recommendation, the Committee asked petitioner to furnish an expert opinion on his fitness to reenter the practice of medicine which, with approval from the Executive Secretary of the State Board for Medicine, petitioner *674 did. Acknowledging his inability to observe petitioner perform any procedures, the consultant concluded that petitioner was fit to practice medicine, subject to supervision and restrictions. A subcommittee of the State Board for Medicine reviewed the consultant’s report and unanimously supported his conclusion. Although the Committee on the Professions remained “troubled” by the seriousness of petitioner’s misconduct, it recommended, by a two-to-one vote, restoration of petitioner’s license with restrictions. The Committee recommended a 10-year probation period, the first five years limited to a hospital setting. It also adopted the terms imposed by the Peer Review Committee and recommended that petitioner obtain re-certification in obstetrics and gynecology by the end of the second year of his probation.
The Board of Regents rejected the recommendation of the Committee on the Professions and denied petitioner’s reinstatement application. It cited the gravity of the original offense, the size of petitioner’s practice at that time, petitioner’s failure to express appropriate remorse for his patients and the reservations and limitations expressed by the consultant and the Committee on the Professions. Petitioner thereafter commenced this CPLR article 78 proceeding, challenging the Board’s determination as an abuse of discretion. Supreme Court dismissed the petition, concluding that the Board’s determination was neither arbitrary nor capricious, but supported by a rational basis. A majority of the Appellate Division reversed, holding that petitioner’s acceptance of responsibility for his misconduct and his continuing education compelled the exercise of discretion in his favor. Justice Mercure dissented on the ground that the majority “impermissibly weighed the evidence and substituted its judgment for that of [the] Board” (270 AD2d 748, 750). Agreeing with the view cogently articulated by the dissenting Justice, we now reverse.
Education Law §§ 6510 and 6511 vest the Board of Regents with considerable discretion concerning matters of professional misconduct, including the revocation and restoration of medical licenses (see also, Matter of Tompkins v Board of Regents, 299 NY 469, 476). Indeed, restoration of such licenses is permissive and is granted only in rare cases “ ‘where the merit of the applicant is clearly established to the satisfaction of the [Board]”’ (Matter of Jablon v Board of Regents, 271 App Div 369, 373, affd 296 NY 1027, quoting Matter of Erlanger v Regents of Univ. of State of N. Y., 256 App Div 444, 447, affd sub nom. Matter of Levi v Regents of Univ. of State of N. Y., *675 281 NY 627). The burden of proof is on the applicant to present evidence “so ineluctable in its implications that it would compel affirmative action from a Board which has 'discretion’ to restore or to refuse to restore” (Matter of Jablon v Board of Regents, supra, at 373). In exercising that discretion, the Board is not required to weigh or consider any particular factors. As long as the Board’s determination is supported by a rational basis, and is neither arbitrary nor capricious, it will not be disturbed (see, id.; see also, Matter of Pell v Board of Educ., 34 NY2d 222, 230-231).
Here, the Appellate Division departed from this well-settled standard and substituted its own judgment for that of the Board. The majority determined that, “[i]n [its] view,” (270 AD2d, at 750) petitioner’s acceptance of responsibility for his actions, his continuing medical education and his consultant’s fitness assessment justified reinstatement of his medical license. The majority’s holding not only reflects an impermissible weighing of the evidence, but also is based on an erroneous “balanced evaluation of factors” standard (270 AD2d, at 749) that neither this Court, nor the Legislature, has ever authorized. Rather, the appropriate standard of review is whether the Board’s determination is supported by a rational basis (Matter of Pell v Board of Educ., supra, 34 NY2d, at 231). We conclude that it is.
In denying petitioner’s application, the Board cited the seriousness of petitioner’s misconduct, as well as “qualifications expressed by the expert consultant,” whose assessment was admittedly limited by his inability to observe petitioner’s performance. Further, the Board expressed dissatisfaction with the “amount and type of supervision” that would be available in a hospital setting. Finally, although petitioner felt “sad for what happened to the patients,” the Board determined that petitioner’s statements did not reflect an appropriate degree of remorse for his patients. On this record, the Board’s denial of petitioner’s application was neither irrational nor arbitrary.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division for consideration of issues raised but not determined on the appeal to that Court.
Chief Judge Kaye and Judges Smith, Levine, Wesley, Rosenblatt and Graffeo concur.
Order reversed, etc.